UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HASSAN I MIR,

*Plaintiff,*

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, SECRETARY KRISTI L. NOEM, and PATRICIA HYDE,

*Defendants.*

No. 26-cv-10915-PGL

**ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

LEVENSON, U.S.M.J.

INTRODUCTION

Plaintiff, Hassan Ibrahim Mir, is a lawful permanent resident ("LPR") who voluntarily left the United States in 2017, after receiving a Notice to Appear from federal immigration authorities. The Notice indicated that Mr. Mir was removable, based on his criminal conviction in Vermont. At the time he left the country, Mr. Mir feared that federal immigration authorities would otherwise detain him and forcibly deport him. An *in absentia* removal order entered against him several years later.

Some years later, Mr. Mir's guilty plea in the Vermont criminal matter was vacated, and his removal proceedings were terminated. Since then, Mr. Mir, with assistance of his counsel, has made several attempts to obtain the necessary documentation to board a plane to the United States, so far all in vain. He now seeks relief in this Court.

Before the Court is Defendants' Motion to Dismiss (Docket No. 9) (the "Motion") and Mr. Mir's Request for Injunctive Relief (Docket No. 14 at 15–16) (the "Request for Injunctive Relief") which Mr. Mir raised in his opposition to the Motion.

This Order will consider Mr. Mir's claims under the Administrative Procedure Act ("APA") and the Mandamus Act together because both claims hinge on the same question: whether Defendants have a non-discretionary duty to facilitate Mr. Mir's physical return to the United States. The Complaint has not plausibly alleged a legal source for such a duty, so both Count I and Count II will be dismissed.

Mr. Mir also brings a procedural Due Process claim under the Fifth Amendment. This claim fails as well. Assuming Mr. Mir has a protected liberty interest in living with his family in the United States, the Complaint has not plausibly alleged that he was deprived of that interest without due process. Count III will therefore also be dismissed.

On the same reasoning, Mr. Mir's request for injunctive relief must be denied as he cannot demonstrate a likelihood of success on the merits.

I will also address Mr. Mir's additional allegations, even though these are raised for the first time in Mr. Mir's opposition brief. Mr. Mir reports that immigration authorities have issued a Request for Evidence ("RFE") which, Mr. Mir fears, may be a prelude to stripping him of his LPR status. Inasmuch as the issuance of an RFE does not reflect any final adverse action, it cannot form the predicate for a reviewable claim of retaliation.

For these reasons, explained more fully below, the Motion is allowed, all claims are dismissed, and the Request for Injunctive Relief is denied.

## I. Factual Background

Except where otherwise noted, the following facts are drawn from the Complaint.

Mr. Mir was granted LPR status, along with his family, in 2015.[1] Docket No. 1 ("Complaint") ¶¶ 6, 31. The following year, the Department of Homeland Security ("DHS") issued a Notice to Appear to Mr. Mir, charging him with removability based on a guilty plea in Vermont for possession of a controlled substance. *Id.* ¶ 32; *see* Docket No. 1-7 at 2. In spring 2017, before any hearing in Immigration Court, Mr. Mir departed the United States out of fear that he would be detained and forcibly deported if he remained. *Id.* ¶ 33. Just under three years later, an *in absentia* order of removal issued from the Immigration Court.[2] *Id.* ¶ 34. Around four years after that, Mr. Mir's guilty plea was vacated, and his criminal case was dismissed. *Id.* ¶ 35. Mr. Mir promptly sought to reopen his removal proceedings and to rescind the order of removal. *Id.* ¶ 36. Within months, by November 2024, the Immigration Judge granted reopening and then

[1] Under the Immigration and Nationality Act ("INA"), "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20).

[2] Under the INA, "[a]ny [non-citizen] who, after written notice . . . does not attend a [removal] proceeding . . . shall be ordered removed in absentia if the [Immigration and Naturalization Service of the Department of Justice] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the [non-citizen] is removable." 8 U.S.C. § 1229a(b)(5)(A); *see* 8 U.S.C. § 1101(a)(34).

termination of the removal proceedings, which extinguished the prior removal order. *Id.* ¶¶ 37–39. This restored Mr. Mir's LPR status.[3] *Id.* ¶¶ 13,[4] 39.

Notwithstanding the restoration of Mr. Mir's LPR status, he remains in something of a limbo and is apparently stranded outside the United States. *Id.* ¶ 1. Because Mr. Mir does not presently have a document to establish his LPR status, he has been unable to board a flight to return to the United States. *Id.* ¶ 40. Mr. Mir has applied for a replacement permanent resident card and a returning resident SB-1 visa, but he is unable to attend the required biometric collection appointment in the United States for the replacement card, and the consular office in London, England, has denied his visa application. *Id.* ¶¶ 41–42. Mr. Mir's counsel has sought assistance from Immigration and Customs Enforcement's ("ICE") Enforcement and Removal Operations ("ERO") division, to no avail. *Id.* ¶ 43. Mr. Mir's family continues to reside in the United States, and his ongoing inability to return has been difficult for both him and his family. *Id.* ¶ 44.

Mr. Mir also asserts that, after he filed this litigation, United States Citizenship and Immigration Services ("USCIS") sent him an RFE which he describes as "clearly targeted at charging [him] with abandonment of his green card." Docket No. 14 at 14.

---

[3] Although this is a legal conclusion and need not be accepted as true even at the motion to dismiss stage, Defendants do not contest the point, and it appears generally consistent with Mr. Mir's cited cases and the ICE Directive. *See Nken v. Holder*, 556 U.S. 418, 429 n.1 (2009) (quoting Solicitor General's statement at oral argument: "[I]f the motion to reopen is granted, that vacates the final order of removal and, therefore, there is no longer a final order of removal . . . ."); *Matter of Lok*, 18 I. & N. Dec. 101, 107 (BIA 1981) (nullification of removal order, at least in some circumstances, "restores the [non-citizen]'s lawful permanent resident status"); *see also* Docket No. 10-2 at 3 ("Restore a[ non-citizen] to lawful permanent resident (LPR) status" means "[t]o enter a judicial decision which renders non-final an administrative removal order against an LPR.").

[4] The Complaint contains two paragraphs numbered 13. For clarity, this citation is to paragraph 13 on page 4 of the Complaint.

## II. Legal Standards

### *A. Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[I]n order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### *B. Preliminary Injunction*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "When the government is the nonmovant, the third

and fourth factors merge." *Ozturk v. Trump*, 819 F. Supp. 3d 45, 55 (D. Mass. 2025), *appeal dismissed sub nom. Oztrk v. Hyde*, No. 26-1135, 2026 WL 2280885 (1st Cir. Apr. 17, 2026).

### *C. Administrative Procedure Act*

The APA empowers a "reviewing court" to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A claim brought under this provision "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "In this regard the APA carried forward the traditional practice prior to its passage, when judicial review was achieved through . . . principally writs of mandamus . . . ." *Id.* at 63.

### *D. Mandamus Act*

The Mandamus Act empowers the district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy that is only available upon a showing that the plaintiff has exhausted all other avenues of relief and that the defendant owes the plaintiff a clear, nondiscretionary duty." *Camilo-Montoya v. United States*, No. 93-1913, 1994 WL 198173, at *2 (1st Cir. May 20, 1994); *see Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 167 (1st Cir. 2021) ("A writ of mandamus is an extraordinary remedy that is available only when certain conditions are met, including that a party has exhausted all other avenues of relief." (citation modified)).

### *E. Procedural Due Process*

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Exactly what process is due "varies with the circumstances." *Landon v. Plasencia*,

459 U.S. 21, 34 (1982), *superseded by statute on other grounds*, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 ("IIRIRA").

> In evaluating the procedures in any case, the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

*Id.* (citations omitted).

## III. Discussion

### *A. Counts I and II: APA and Mandamus Act*

Counts I and II, brought pursuant to the APA and the Mandamus Act, both require a showing that the government agency at issue had a non-discretionary duty. The parties' briefing focuses primarily on this issue, so it makes sense here to consolidate the analysis for these two claims. If Mr. Mir has not plausibly alleged that Defendants have a non-discretionary duty to facilitate his return to the United States, neither of these claims can survive the government's motion to dismiss. *See Norton*, 542 U.S. at 64 (APA claim "can proceed only where . . . an agency failed to take a *discrete* agency action that it is *required to take*."); *Camilo-Montoya*, 1994 WL 198173, at *2 ("Mandamus is . . . only available upon a showing . . . that the defendant owes the plaintiff a clear, nondiscretionary duty.").

Defendants argue that the various agency directives and manuals that Mr. Mir cites in the Complaint apply only to a person who has been *removed* from the United States, and that they are not applicable to Mr. Mir (who independently left the United States several years before a removal order entered). On this reasoning, Defendants contend that Mr. Mir cannot establish that they have breached any non-discretionary duty. Docket No. 10 at 5–8. Defendants argue that the ICE Directive, in particular, is appropriately limited to the circumstance in which it arose: That is to say, the Directive is aimed at ensuring that the government will make good on a representation

to the Supreme Court regarding the availability of procedural safeguards to facilitate the return to the United States of individuals who ultimately establish that they have been improvidently removed. Docket No. 22 at 4–5.

Plaintiff responds that the circumstances of Mr. Mir's departure present "a distinction without a difference," arguing that the same safeguards should extend to him. Docket No. 14 at 4. He argues that even though he departed independently and prior to any deportation hearing, Mr. Mir is situated similarly to improperly removed individuals in that he is still being prevented from returning to the United States after a removal order has been vacated. *Id.*

The problem for Mr. Mir is that the wording of the ICE Directive is narrow. Mr. Mir concedes that the ICE Directive "purports to give ICE *discretion* to deny return to the vast majority of noncitizens who have won their cases" because, among other things, it "indicates that ICE ERO is only mandated to return noncitizens when a *court's* decision in their favor 'restores' them to [LPR] status." *Id.* at 7 (first emphasis added). Mr. Mir also acknowledges that "the [ICE] Directive applies only to 'certain' prevailing noncitizens, otherwise giving the agency *unchecked discretion* as to whether to effectuate return." *Id.* (emphasis added). Mr. Mir argues, however, that the ICE Directive, at least as construed by Defendants, is arbitrary and capricious and violates the APA.[5] *Id.* at 8–10. Mr. Mir also argues that, unless he is provided with documentation to establish his LPR status (which he needs in order to travel to the United States), the restoration of his LPR status by the Immigration Court "is meaningless." *Id.* at 11–12.

[5] Mr. Mir does not lodge a direct APA challenge to the ICE Directive itself in his Complaint. His APA claim seeks only to compel Defendants to facilitate his return. Therefore, the Court does not here evaluate whether the ICE Directive is itself arbitrary or capricious.

Defendants have the better of the arguments, within the applicable legal standard. Although it seems evident that Defendants *could* take some action to facilitate Mr. Mir's return to the United States, the high bar under the APA and the Mandamus Act demands more: a non-discretionary duty to take such action. The Complaint does not plausibly allege a non-discretionary duty to facilitate Mr. Mir's return to the United States, leaving this Court without authority to grant that relief.

The ICE Directive at issue here purports to "describe[] existing ICE policy for facilitating the return to the United States of certain lawfully removed [non-citizens]." Docket No. 10-2 at 2.[6] Facilitating non-citizens' returns encompasses such steps as "issuing a Boarding Letter to permit commercial air travel" and "parol[ing] the [non-citizen] into the United States upon his or her arrival at a U.S. port of entry." *Id.* The ICE Directive provides for such steps to occur in specific circumstances: when "a[ non-citizen] who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her [petition for review] was pending" and "the court's decision restores the [non-citizen] to [LPR] status." *Id.*

The history of the ICE Directive sheds some light on its meaning and purpose. The Directive arose from *Nken v. Holder*, a Supreme Court case in which the Court considered competing standards regarding a court of appeals' authority to stay a removal order while

[6] "When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). The ICE Directive is incorporated into the Complaint in this case, and the Court therefore considers the entirety of the ICE Directive.

considering the legality of that order. *Nken v. Holder*, 556 U.S. 418, 422 (2009).[7] The Court held that a court of appeals may issue a stay of a removal order upon consideration of four factors, including "whether the applicant will be irreparably injured absent a stay." *Id.* at 434. The Court then went on to conclude that "the burden of removal alone cannot constitute the requisite irreparable injury" to support a stay of a removal order. *Id.* at 435. This was because, given "Congress's decision in IIRIRA to allow continued prosecution of a petition after removal," applicants who are "removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return." *Id.* (citing Brief for Respondent at 44).

The Complaint highlights the representation the Office of the Solicitor General ("OSG") made to the Court in that case: "By policy and practice, the government accords [noncitizens] who *were removed* pending judicial review but then prevailed *before the courts* effective relief by, *inter alia*, facilitating the [noncitizens'] return to the United States . . . ." Complaint ¶ 16 (emphasis added). The Complaint points out that the OSG admitted shortly thereafter that no such policy or practice existed at the time that *Nken* was decided. *Id.* ¶ 18. However, the ICE Directive quickly took form to make good on the OSG's premature assurances. *Id.* ¶¶ 18–19; *see Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (separate opinion) ("[I]t has been the Government's own well-established policy to 'facilitate [a non-citizen]'s return to the United States if . . . the [non citizen]'s presence is necessary for continued administrative removal

---

[7] The issue arose "from changes in judicial review of immigration procedures brought on by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, which substantially amended the Immigration and Nationality Act (INA)." *Nken*, 556 U.S. at 423.

proceedings' in cases where a noncitizen has been removed pending immigration proceedings." (quoting ICE Directive)).

The fundamental problems for Mr. Mir's claims are twofold. First, Mr. Mir was not removed. Instead, he independently departed the United States before a removal order had entered. Second, the reinstatement of Mr. Mir's LPR status was not the result of any ruling by an Article III court. While the Immigration Court, an administrative agency of the executive branch, has acted to reopen and terminate his removal proceedings, Mr. Mir cannot be said to have prevailed on a petition for review before the Courts. Under these circumstances, the ICE Directive cannot be read to establish a *non-discretionary duty* to facilitate Mr. Mir's return.[8]

There is a further hurdle for Mr. Mir's effort to identify a non-discretionary duty. The ICE Directive recites that it "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter." Docket No. 10-2 at 4. This broad disclaimer further undermines any support the ICE Directive could have provided to Mr. Mir's claims.

In a report and recommendation earlier this year, a U.S. Magistrate Judge in the Northern District of Ohio concluded, albeit in dicta,[9] that the ICE Directive "does not create a clear legal right to relief" and that a plaintiff seeking to compel ICE to process his request for facilitation of his return to the United States had not demonstrated a likelihood of success on the merits of his

[8] Any communications or procedures that would *follow from* a determination that someone is eligible for facilitation of return pursuant to the ICE Directive, *see, e.g.*, Complaint ¶¶ 20–24, logically cannot inform the earlier, threshold determination of *whether* that person's circumstances fit within the ICE Directive's scope. Thus, the Foreign Affairs Manual provisions that Mr. Mir cites in the Complaint do not alter the situation.

[9] ICE had processed the plaintiff's request before the report and recommendation issued, rendering the request for preliminary injunction moot. *Guzman Perez*, 2026 WL 1700517, at *4.

APA or Mandamus Act claims. *See Guzman Perez v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 1:26-CV-00962-DAR, 2026 WL 1700517, at *4–5 (N.D. Ohio June 12, 2026). In *Guzman Perez*, the plaintiff was "removed from the United States in 2025," before "his removal order was reopened by the Board of Immigration Appeals" later that same year. *Id.* at *1. Acknowledging the parties' arguments as to "whether [the ICE Directive] requires mandatory facilitation of return or is a decision left to the discretion of the agency," the court nonetheless concluded that "what is abundantly clear from the text of the policy is that it does not create a clear right." *Id.* at *4. In the absence of a clear legal right, the court found that the plaintiff was unlikely to succeed on his APA and Mandamus Act claims. *Id.* at *5.

A U.S. District Judge in the Eastern District of Michigan reached a similar conclusion, relying on the language disclaiming a private right of action and also on the contrast between the circumstances of the case under consideration and those outlined in the ICE Directive. *See Ezenabo v. Customs & Border Prot.,* No. 18-CV-13584, 2019 WL 2122951, at *3 (E.D. Mich. May 15, 2019). In *Ezenabo*, the plaintiff was removed in 2015, and his case was reopened the following year. *Id.* at *1. The plaintiff sought an order requiring ICE to facilitate his return so that he could appear at his removal hearing, and he "ask[ed] the [c]ourt to declare that [the d]efendants, by not facilitating his return to the United States, ha[d] violated the [INA], the Fifth Amendment's Due Process Clause, and the [APA]." *Id.* at *1–2. The court highlighted the ICE Directive's disclaimer language and concluded that the Directive was "inapplicable to the facts of th[e] case" because "[n]either of th[e] two conditions" it identified were present. *Id.* at *3. Therefore, the court granted the defendants' motion to dismiss the complaint in that case. *Id.*

While Mr. Mir points to examples of Defendants' willingness to facilitate the return of other individuals, *see* Complaint ¶¶ 29–30, such examples do not establish the existence of a

non-discretionary duty to facilitate Mr. Mir's return. "[U]nder certain circumstances a consistent practice over a long period of time could evidence an unwritten policy." *See Nat'l Ctr. for Learning Disabilities v. Off. of Mgmt. & Budget*, No. 26-CV-13019-ADB, 2026 WL 2754447, at *16 (D. Mass. Sept. 17, 2026) (addressing claims challenging agency action). However, even if we accept the proposition that an unwritten policy can sometimes suffice to establish a non-discretionary duty, this is not an argument that Mr. Mir develops in his opposition brief, so there is no clear basis to apply such proposition here. The two articles and six cases Mr. Mr. cites in the Complaint also do not plausibly allege "a consistent practice over a long period of time." Furthermore, as Defendants point out, several of the examples cited in the Complaint involved individuals who (unlike Mr. Mir) had been *removed*, fitting them within at least one of the specific circumstances identified in the ICE Directive. *See* Docket No. 10 at 8; *see also, e.g.*, Matt Katz, *Deported 20 years ago, Brooklyn man's extraordinary fight to return reaches an end*, Gotham (May 1, 2023), https://gothamist.com/news/deported-20-years-ago-brooklyn-mans-extraordinary-fight-to-return-reaches-an-end ("Lorenzo Charles . . . was deported in 2003 . . . ."); Compl. ¶ 2, *Previl v. DHS Dep't of Homeland Sec.*, No. 13-cv-23230-MGC (S.D. Fla. Sept. 6, 2013) ("Mr. Previl was physically deported to Haiti on or about October 15, 2012."). These other examples further illustrate that the United States *could* facilitate Mr. Mir's return—but fall far short of establishing that it *must*.

Because the Complaint does not plausibly allege a non-discretionary duty to facilitate Mr. Mir's return to the United States, and neither the APA nor the Mandamus Act gives this Court authority to direct the manner in which Defendants exercise their discretion, the Complaint fails to state a claim upon which relief can be granted as to Counts I and II.

### *B. Count III: Due Process*

Under the flag of the Due Process clause, Mr. Mir advances an argument that the Defendants' failure to provide him with travel documents has the effect of depriving him of his liberty interest, as an LPR, in residing with his family in the United States. Docket No. 14 at 12–13. He further argues that such deprivation has occurred without due process of law in that he has not received process comparable to the procedures afforded to an LPR facing removal proceedings within the United States. *Id.* He contends that he is effectively being denied his procedural right to file and be heard on a motion to reopen his deportation proceedings if he cannot return to the United States after prevailing on such a motion. *Id.* at 12. Defendants respond that this claim should fail for the same core reason as Counts I and II: Defendants contend Mr. Mir has not established that he has a right to require Defendants to facilitate his return to the United States. Docket No. 22 at 5.

To prevail on a claim under the Fifth Amendment Due Process Clause, a plaintiff must allege a "depriv[ation] of life, liberty, or property, without due process of law . . . ." *See* U.S. Const. amend. V; *see also Mimiya Hosp., Inc. SNF v. U.S. Dep't Of Health & Hum. Servs.*, 331 F.3d 178, 181 (1st Cir. 2003) ("The deprivation of a constitutionally protected interest in life, liberty, or property is a threshold requirement for a successful procedural due process claim."). "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Generally, non-citizens "receive constitutional protections when they have come within the territory of the United States and developed substantial

connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990).[10] Therefore, a non-citizen "who has become a[n LPR] enjoys the full protection of the United States Constitution." *Herrera-Inirio v. I.N.S.*, 208 F.3d 299, 306 (1st Cir. 2000).

Of course, "[i]t is well established that the Fifth Amendment entitles [non-citizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "At the core of these due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard." *Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997). The twist here is that Mr. Mir does not allege a lack of due process in his removal proceedings. On the contrary, he alleges that he filed several motions in his removal proceedings after his guilty plea was vacated and his criminal case dismissed, and that the Immigration Judge granted reopening, and then termination, of the removal proceedings in 2024. Complaint ¶¶ 35–38. Mr. Mir's Due Process challenge is aimed at what happened next—or more precisely, what *hasn't* happened—that Defendants have not taken any steps to facilitate Mr. Mir's return to the United States.

Assuming (without deciding) that Mr. Mir has adequately alleged a liberty interest protected by the Due Process Clause,[11] the core question in this case is: Did Defendants deprive

[10] The Supreme Court has, in some circumstances, "rejected the claim that [non-citizens] are entitled to Fifth Amendment rights outside the sovereign territory of the United States." *Verdugo-Urquidez*, 494 U.S. at 269. Thus, there is a potential question as to whether Mr. Mir is even entitled to advance a procedural Due Process claim under the Fifth Amendment for a deprivation that occurred while he was outside the United States. As discussed below, this issue need not be resolved in order to decide the pending motion. Given the delicacy of the question and the challenge of addressing it on the basis of the limited record before the Court at this stage of the case, I will reserve ruling on the point.

[11] "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). *But see Johnson v. Rodriguez*, 943 F.2d 104, 109 (1st Cir. 1991) ("To qualify as a liberty interest, and

*Footnote continues on following page.*

Mr. Mir of that interest without due process of law to which he was entitled? A brief detour into the Supreme Court's decision in *Landon v. Plasencia*, upon which Mr. Mir now relies, will provide some guiding principles to resolve this question.

In *Landon*, Ms. Plasencia, an LPR, was denied entry to the United States, following an exclusion hearing, when she attempted to return from a brief trip abroad. *Landon*, 459 U.S. at 22. Ms. Plasencia and her husband had been detained after a border officer found six additional non-citizens in their car. *Id.* at 23. An immigration judge conducted an exclusion hearing, after finding that Ms. Plasencia's "trip to Mexico was a 'meaningful departure' from the United States and that her attempt to return therefore constituted an 'entry.'"[12] *Id.* at 24. Under the legal framework in place at the time, treating Ms. Plasencia's return as an "entry" meant that Ms. Plasencia was entitled only to an exclusion hearing, rather than a deportation hearing (with more fulsome procedural protections).[13] *Id.* at 24–25. The *Landon* opinion clarified that although an

---

thus to invoke the procedural guarantees contained in the Due Process Clause, 'a right or status previously recognized by [governing] law [must be] distinctly altered or extinguished' by [government] action." (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1975) (second alteration in original))).

[12] Today, "[u]nder the INA, [LPRs] are regarded as seeking admission, *i.e.* entry, into the United States only if they fall within six categories, including *inter alia*, being absent from the United States for 180 days or more." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 33 (D. Mass. 2017) (citing 8 U.S.C. § 1101(a)(13)(c)).

[13] Under the framework in place when *Landon* was decided, "[t]he deportation hearing [wa]s the usual means of proceeding against a[ non-citizen] already physically in the United States, and the exclusion hearing [wa]s the usual means of proceeding against a[ non-citizen] outside the United States seeking admission." *Landon*, 459 U.S. at 25. As the Second Circuit has recently explained, that system was largely superseded by statute with the 1996 enactment of IIRIRA: "One aim of IIRIRA was to eliminate the dual track for removal that had previously placed some noncitizens into exclusion proceedings and others into deportation proceedings. That regime granted substantial legal privileges and rights only to noncitizens in deportation proceedings, including rights to notice and direct appeal." *Barbosa da Cunha v. Freden*, 175 F.4th 61, 89 n.9 (2d Cir.

*Footnote continues on following page.*

LPR "returning from a brief trip has a right to due process just as would a continuously present" LPR, the Court had not previously recognized a "right to identical treatment for these two differently situated groups of" non-citizens. *Id.* at 31. The Court held that, in the circumstances of the *Landon* case, where an LPR had traveled abroad only briefly, she could "invoke the Due Process Clause on returning to this country . . . ." *Id.* at 32.

The Court in *Landon* declined to elaborate on further issues regarding "the contours of the process that is due or whether the process accorded [Ms.] Plasencia was insufficient." It did, however, outline some guiding principles from its precedents. First, and most pertinent to Mr. Mir's current claims, the Court endorsed a distinction between an LPR who returns after a brief trip abroad and one who has been gone for an extended period: Although an LPR "returning from a brief trip abroad . . . 'is entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him,'" an LPR whose "absence is extended" may lose his right to due process in an exclusion decision. *Id.* at 33–34 (quoting *Rosenberg v. Fleuti*, 374 U.S. 449, 460 (1963), *superseded by statute on other grounds*, IIRIRA, then citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 214–15 (1953)). Second, the Court acknowledged the primacy of congressional decision making in setting immigration procedures. Where Constitutional Due Process rights apply, "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy. . . . [T]he courts must evaluate the particular circumstances and determine what

2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026).

procedures would satisfy the minimum requirements of due process on the re-entry of a[n] [LPR].” *Id.* at 34–35.

Here, Mr. Mir was absent from the United States for three years *before* the removal order was entered, and he has now been absent for almost ten years. *See* Complaint ¶¶ 33–34. This cannot seriously be deemed a “brief trip abroad.” On the other hand, his initial departure was arguably precipitated by his fear of detention and forced deportation, so his circumstances are somewhat different from other LPRs who travel abroad for multiple years. *See id.* ¶ 33. Moreover, Mr. Mir has been trying to return to the United States since his immigration proceedings were terminated two years ago. *See id.* ¶¶ 38–43.

The parties have not briefed the issue of whether—in light of these arguably unique circumstances—Mr. Mir is entitled to due process. I will assume, without deciding, that the Due Process Clause has attached in the specific circumstances of this case.

Mr. Mir has alleged that he is required to present a document proving his LPR status in order to board a flight to the United States. *Id.* ¶ 40. He has further alleged that his applications for either a replacement or a new identification document and his requests for other assistance to facilitate his return have been unavailing. *Id.* ¶¶ 41–43.

As the record stands, Mr. Mir has plausibly alleged that he cannot return to the United States at this time. There is no allegation, however, that Defendants have terminated Mr. Mir’s LPR status—or even that Defendants have reached a final decision on his application for a replacement document. *See id.* ¶ 41. The mere allegation that an application has not been processed to date does not state a plausible claim that Mr. Mir has been deprived of his (presumed) Due Process rights. Nor can the denial of Mr. Mir’s application for a new document (a returning resident visa) support a Due Process claim; it is well settled that “[t]here is no

constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

Finally, Mr. Mir alleges that his counsel contacted ICE's ERO division requesting assistance and that no such assistance has been forthcoming. Complaint ¶ 43. However, as outlined above, he has not plausibly alleged that there was a duty to provide any such assistance. Accordingly, Mr. Mir cannot plausibly allege that he has been deprived of assistance to which he was entitled. To put it another way, ERO cannot be said to have failed to afford Mr. Mir any process that was due.

The factual allegations of the Complaint fail to state a claim as to Count III.

### *C. Request for Preliminary Injunction*

In his opposition brief, Mr. Mir submits new allegations, regarding purported First Amendment retaliation. He reports that, after filing this litigation, he has been issued an RFE on his Form I-90, Application to Replace Permanent Resident Card. Docket No. 14 at 13–14. On this basis, he raises the prospect that Defendants may seek to charge him with abandonment of his LPR status and posits that such charge would be in retaliation for his filing of this litigation. *Id.* at 13–15.

On this prospective retaliation theory, Mr. Mir seeks an injunction to bar USCIS[14] from finding that he has abandoned his LPR status. *Id.* at 15. Defendants respond that Mr. Mir's claims of retaliation are wholly speculative and that he has failed to show that he is likely to succeed on the merits of any claim for relief, as required to obtain a preliminary injunction. Docket No. 22 at 5–7; *see Together Emps.*, 32 F.4th at 85.

---

[14] USCIS is a component of DHS, a named defendant in this case.

The Court will not issue the requested injunction, which would effectively order that an agency make a specific decision on an issue as to which it is still gathering and considering information.[15] While the district court's role in reviewing agency action in the immigration arena is limited, the APA does in some circumstances provide for judicial review of "final agency action," 5 U.S.C. § 704, which may be "set aside" if it is, for example, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)–(B). But the APA does not by any means give the courts *carte blanche* to second-guess agency decisions. "A reviewing court must not substitute its own judgment for the agency's but instead assesses 'only whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment."'" *Ozturk*, 819 F. Supp. 3d at 58 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020)). Here, Mr. Mir asks the Court not only to substitute its own judgment for the agency's but to do so before the agency has even taken a final action. Such a step would far exceed any authority the Court may have under the APA.

To put another lens on it, under the First Amendment retaliation framework, Mr. Mir would have to show, as to the merits,[16] that "(1) he engaged in constitutionally protected conduct; (2) he was subjected to an adverse action by the defendant; and (3) the protected conduct was a substantial or motivating factor in the adverse action." *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *11 (D. Mass. May 8, 2025). Where these criteria are met, a court may issue a preliminary injunction. For example, in a recent interlocutory appeal of a

---

[15] Defendants explain that the RFE is one tool that USCIS uses to verify LPR status when adjudicating a Form I-90. Docket No. 22 at 7.

[16] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits," among other things. *Together Emps.*, 32 F.4th at 85.

preliminary injunction that required the defendants to reinstate a terminated contract, the First Circuit pointed to evidence of retaliatory motive behind that termination (the adverse action) before denying a stay of the injunction. *See Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs.*, 177 F.4th 1, 12 (1st Cir. 2026). Here, in contrast, the mere issuance of an RFE is not an "adverse action." What Mr. Mir seeks to challenge is an *anticipated* adverse action on his Form I-90, before Defendants have made any decision at all.

Even if the Court treats Mr. Mir's request for injunctive relief as properly raised in his opposition brief, Mr. Mir has not shown a likelihood of success on the merits of a First Amendment retaliation claim.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is ALLOWED, all claims are dismissed, and the Plaintiff's Request for Injunctive Relief is DENIED.

/s/ Paul G. Levenson
Paul G. Levenson
CHIEF U.S. MAGISTRATE JUDGE

Dated: October 16, 2026